**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LORIE FEISTL,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:14-0491** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **LUZERNE INTERMEDIATE UNIT, ANTHONY GRIECO, RONALD MUSTO, GREG KOONS, BETTY JEAN SEGEAR, and KIM GEISINGER** | : | |
| | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Pending before the court is the defendants' motion to dismiss the plaintiff's second amended complaint. (Doc. 53). Upon review of the defendants' motion and related materials, the motion will be granted in part and denied in part as further discussed herein.

**I.     PROCEDURAL HISTORY**

The plaintiff filed the instant action on March 14, 2014. (Doc. 1). Upon motion, the plaintiff was granted leave to file an amended complaint, which she did on October 17, 2014. (Doc. 24). Again, after having been granted leave to do so, on March 31, 2015, the plaintiff filed a second amended complaint. (Doc. 52).

On April 14, 2015, the defendants filed the instant motion to dismiss the plaintiff's second amended complaint, (Doc. 53). A brief in support of the

motion was filed on April 23, 2015. (Doc. 55). On May 28, 2015, the plaintiff filed her brief in opposition to the defendants' motion to dismiss. (Doc. 60). A reply brief was filed by the defendants on June 11, 2015. (Doc. 62).

## II.   LEGAL STANDARD

The defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III.    DISCUSSION

The following allegations are set forth in the plaintiff's second amended complaint and are accepted as true only for purposes of the instant motion to dismiss. At all relevant times, the plaintiff suffered from various maladies, including fibromyalgia, neuropathy, chronic fatigue syndrome, chronic muscle

spasms, depression and anxiety. The plaintiff's conditions caused her to suffer chronic pain and fatigue, as well as difficulty standing and walking for long periods, carrying objects, sleeping, and concentrating.

The defendants became aware of the plaintiff's conditions in or before early 2010 when she began to suffer chronic pain and requested leave to explore treatment options with her physician. Until January 2014, the plaintiff had been approved for intermittent leave under the Family Medical Leave Act, ("FMLA"), and had used said leave on occasion. During a portion of this time, the plaintiff was assigned as an itinerant special education teacher tasked with supporting and coordinating services for special education students in regular classrooms. The plaintiff repeatedly requested reasonable accommodations intended to permit her to perform her job duties effectively despite her conditions. Specifically, the plaintiff requested a parking space closer to the building entrance, permission to sign attendance logs from her classroom, a room in which to work that she would not have to share, a flexible morning start time, and intermittent rest periods during the work day.

On or about April 3, 2013, the plaintiff left a personal tote bag containing her possessions in a locked office at the Alternative Learning Center, ("ALC"), operated by defendant Luzerne County Intermediate Unit, ("LIU"). After school hours, defendant Geisinger and/or defendant Segear, upon the direction of defendant LIU, entered the locked room and searched the plaintiff's personal tote bag. In doing so, the defendants found prescription medication bottles in

the bag which were prescribed for the plaintiff and her minor child. One of the bottles was empty, while the other contained medication prescribed to the plaintiff for anxiety. This bottle was labeled as being prescribed to the plaintiff. The defendants confiscated the plaintiff's tote bag and, upon information and belief, turned the bag over to the local police.

On the following day, the defendants required the plaintiff to attend a meeting at which they confronted her about the medications found in her bag. The defendants insinuated that the plaintiff was abusing drugs and placed her on suspension from her position. Although the defendants had the authority to require the plaintiff to undergo drug screening, they did not request or require her to do so.

Thereafter, the plaintiff was visited at her residence by agents of Luzerne County Children and Youth, ("LCCY"), and several police officers, who indicated that they had received an anonymous tip that the plaintiff and her fiancé were using drugs and endangering their children. The plaintiff's children and fiancé witnessed this visit and were questioned by officials about the plaintiff. In addition, the plaintiff's neighbors witnessed the visit by LCCY and the police. At the visit, LCCY found no drugs and took no action other than to request that the plaintiff take a drug screening. The plaintiff complied and did not test positive for any drugs of abuse. At a follow-up visit, LCCY representatives refused to divulge who made the report about the plaintiff, but told the plaintiff that the report made them aware of "concerns at work"

5

regarding the plaintiff. On this basis, the plaintiff believes that one or more of the defendants made the report to LCCY.

On or about April 8, 2013, the defendants required the plaintiff to attend another meeting at work at which she was questioned about whether she was addicted to drugs. The defendants made it clear that they no longer wanted to continue the plaintiff's employment and encouraged her to consider long-term FMLA leave, a medical sabbatical or disability leave. The defendants refused to discuss with the plaintiff any disability accommodations. At the conclusion of the meeting, the defendants informed the plaintiff that they would be in touch with her regarding whether or not her employment would be terminated. In a letter following this meeting, the defendants indicated that they would provide the plaintiff with accommodations, including a "quiet room/work space, a location to secure your current medications, and a cart with wheels." However, those accommodations were never provided.

The plaintiff received a letter from the defendants dated April 8, 2013, which indicated that she could return to work on April 9, 2013. The letter acknowledged that the defendants' concerns regarding drug abuse were unfounded. Due to an unrelated medical issue, the plaintiff was unable to return to work until April 15, 2013. On that day, the plaintiff returned to work and completed the day without incident. However, at the end of the workday, the defendants again called the plaintiff into a meeting. The defendants indicated that they had concerns about the plaintiff and again suspended the

plaintiff pending an investigation. The defendants did not identify their specific concerns.

On May 6, 2013, the plaintiff was called to a meeting during which the defendants requested documentation from her physicians. The defendants questioned the plaintiff but refused to give her any information relating to their investigation. The defendants demanded that the plaintiff take non-intermittent FMLA leave for the remainder of the year or submit to a fitness-for-duty examination by the defendants' physician. The plaintiff agreed to undergo the examination and made arrangements with one of the physicians designated by the defendants.

On June 3, 2013, before her scheduled fitness-for-duty examination, the plaintiff suffered a pulmonary embolism and was hospitalized until June 6, 2013. On that date, John Audi, Esquire, counsel for defendant LIU, contacted the plaintiff's counsel and stated that the plaintiff was expected to return to work on June 7, 2013, despite the fact that she had not undergone the fitness-for-duty examination which the defendants had previously required. The plaintiff was not released to return to work by her physicians until August 2, 2013, after the school year had ended.

During the plaintiff's suspensions, the defendants told her that she was not permitted to enter school property and not permitted to contact school students or employees. The plaintiff believes that these restrictions were conveyed to her co-workers and/or students. She further believes that her co-

workers and/or students were instructed to notify administration if she attempted to contact them and that her medical issues, absence and performance were discussed with co-workers and students. Specifically, the plaintiff believes that the defendants informed her co-workers and/or students that she was suspected of abusing drugs and portrayed her as a dangerous and possibly criminal individual who was a threat to staff and students.

For the 2013-2014 school year, the plaintiff requested that she be reassigned to a different building as an accommodation. In a telephone conversation with the plaintiff's counsel, Defendant LIU, through its attorney, offered to assign the plaintiff to a different building if she would release the defendants from liability in this matter. When confronted by the plaintiff's counsel regarding conditioning an accommodation upon the plaintiff's surrender of her statutory rights, defendants withdrew their demand and offered plaintiff assignment at her previous building, the ALC, or another building which was approximately 20 miles from her home. Plaintiff chose to return to the ALC.

On August 21, 2013, the plaintiff returned to teaching at the ALC. At that time, the plaintiff's caseload and assignments were increased dramatically from that which she was assigned in the 2012-2013 school year. No explanation was provided for the increase and no other teachers at the ALC experienced such a dramatic increase in their caseloads and assignments. The plaintiff alleges that the increase in her caseload was in retaliation for her

8

asserting her rights. In addition, the plaintiff claims that the defendants imposed additional rules and requirements upon her including, but not limited to, a requirement that she sign in and out every time she left the building and a requirement that she prepare and submit weekly work plans to her immediate supervisor. These requirements were not imposed on other employees.

On January 21, 2014, the defendants terminated the plaintiff's intermittent FMLA leave reasoning that she no longer met the "hours of service" requirement for FMLA eligibility. The plaintiff alleges that she no longer met those requirements because of the repeated, unexplained and unnecessary leave periods imposed upon her by the defendants. Moreover, the plaintiff claims that, prior to terminating her FMLA leave, the defendants did not request recertification of her leave nor did they offer any explanation as to the reasons for her termination.

After January 21, 2014, the defendants began to discipline the plaintiff for using leave time that had previously been FMLA protected leave. In addition, the plaintiff claims that the defendants subjected her to excessive and overly harsh monitoring and performance evaluations. According to the plaintiff, the performance evaluations did not take into account the effects of the defendants' acts upon the plaintiff's performance, including their refusal to provide her accommodations and the assignment to her of larger workloads. The plaintiff further claims that the defendants' performance reviews were

conducted using standards and forms that had not been used in the evaluation of her peers who had not used FMLA leave and who were not disabled.

On May 6, 2014, the plaintiff received a <u>Loudermill</u>[1] letter informing her that defendant LIU was planning to recommend to the Board of Directors that her employment be terminated. The letter was sent to the plaintiff shortly after she filed the original complaint in this matter. The letter did not give the plaintiff notice of the facts purportedly supporting the defendants' intention to terminate her employment, but stated only that the defendants were "contemplating recommending to the Board of Directors [her] dismissal of employment as a professional educator." The letter did not contain any specific allegations of misconduct or performance issues, but indicated that the plaintiff would "be afforded an opportunity to be apprised of the specification of charges against [her]" and "an opportunity to defend [herself] against the complaints" at the <u>Loudermill</u> hearing.

The plaintiff was notified by letter dated August 6, 2014 that the defendants were proceeding with her termination and was provided with a written statement of the charges in support of thereof. The letter referenced alleged violations including "[f]ailure to comply with directives of LIU officials as documented on attachment", "taking unpaid time without authorization as documented on attachment", and "not fulfilling job functions by not calling in and not reporting to work as documented on attachment". The plaintiff was

---

[1] <u>See</u> Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985).

also accused of "Incompetency and Poor Work Performance" referencing "attached Evaluation and Observations" and "attached Employee Improvement Plan." According to the plaintiff, none of the "attachments" referenced in the letter were provided to her. The plaintiff's employment was terminated as of August 6, 2014.

Based upon the above allegations, the plaintiff sets forth the following seventeen counts in her second amended complaint: Count One - Illegal Search pursuant to 42 U.S.C. §1983 against all defendants; Count Two - Illegal Seizure pursuant to 42 U.S.C. §1983 against all defendants; Count Three - Due Process violations pursuant to 42 U.S.C. §1983 against all defendants; Count Four - Conspiracy to Interfere with Civil Rights pursuant to 42 U.S.C. §1985(3) against all defendants; Count Five - Action for Neglect to Prevent Conspiracy pursuant to 42 U.S.C. §1986 against all defendants; Count Six - Failure to Accommodate in Violation of Section 504 of the Rehabilitation Act of 1973 against defendant LIU; Count Seven - Retaliation in Violation of Section 504 of the Rehabilitation Act of 1973 against defendant LIU; Count Eight - Defamation against all defendants; Count Nine - Invasion of Privacy (False Light) against all defendants; Count Ten - FMLA Interference against all defendants; Count Eleven - FMLA Retaliation against all defendants; Count Twelve - Intentional Infliction of Emotional Distress, ("IIED"), against all defendants; Count Thirteen - Violation of the First Amendment pursuant to 42 U.S.C. §1983 against all defendants; Count

11

Fourteen - Unlawful Discrimination on the Basis of Disability in Violation of the Americans with Disabilities Act, ("ADA"), against defendant LIU; Count Fifteen - Unlawful Retaliation in Violation of the ADA against defendant LIU; Count Sixteen - Unlawful Discrimination on the Basis of Disability in Violation of the Pennsylvania Human Relations Act, ("PHRA"), against all defendants; and Count Seventeen - Unlawful Retaliation in Violation of the PHRA against all defendants.

In their motion to dismiss the plaintiff's second amended complaint, the defendants argue that the plaintiff's state law claims for defamation (Count Eight), Invasion of Privacy (False Light) (Count Nine) and IIED (Count Twelve), should be dismissed as against defendant LIU and the individual defendants in their official capacities under the Pennsylvania Political Subdivision Tort Claims Act, ("PSTCA"), 42 Pa.C.S.A. §8501, et seq.

Section 8541 of the PSTCA provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." The PSTCA enumerates a list of exceptions for liability in certain circumstances, namely where the local agency or its employees in their official capacities acted negligently. See 42 Pa.C.S.A. §8542. "'[N]egligent acts' shall not include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." 42 Pa.C.S.A. §8542(a)(2). Section 8550 exposes the employees of a local agency to personal liability upon a judicial determination that the

employee's act constituted a "crime, actual fraud, actual malice or willful misconduct" but does not impose liability on the local agency for such conduct. 42 Pa.C.S.A. §8550; Steiner v. City of Pittsburgh, 509 A.2d 1368, 1370 (Pa. Cmwlth. 1986). Under Pennsylvania law, "willful misconduct" has been defined to mean "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." King v. Breach, 540 A.2d 976, 981 (Pa. Cmwlth. 1988) (citing Evans v. Philadelphia Transportation Co., 212 A.2d 440 (Pa. 1965)). "In other words, the term 'willful misconduct' is synonymous with the term 'intentional tort.'" King, 540 A.2d at 981.

Here, the plaintiff asserts claims for defamation, invasion of privacy (false light), and IIED against all defendants. These claims are intentional torts. Courts have held that a governmental agency cannot be held liable for the intentional torts of an employee under the PSTCA. See, e.g., Lakits v. York, 258 F.Supp.2d 401, 405 (E.D.Pa. 2003) (citations omitted). Because these claims are intentional torts which do not fall within the exceptions for negligent conduct provided for in §8542, they cannot be the basis for liability against the moving defendants. See, e.g., Gines v. Bailey, 1992 WL 394512, *5 (E.D.Pa., Dec. 29, 1992) (false arrest and imprisonment, battery, malicious prosecution, invasion of privacy, and intentional infliction of emotional distress); Tarlecki v. Borough of Darby, 1992 WL 172729, *6 (E.D.Pa., July 14, 1992) (invasion of privacy, battery, and intentional infliction of emotional

distress); McClellan v. Frazier, 1992 WL 163295, *4 (E.D. Pa. July 6, 1992) (defamation and invasion of privacy). Thus, the defendants' motion to dismiss the plaintiff's claims for defamation, invasion of privacy (false light), and IIED will be granted as against defendant LIU and the individual defendants in their official capacities on the basis of PSTCA immunity.

In their individual capacities, defendants Grieco and Koons argue that they are entitled to immunity from suit under the doctrine of high public official immunity. "Pennsylvania common law recognizes the doctrine of absolute immunity for 'high public officials.'" Smith v. School District of Phila., 112 F.Supp.2d 417, 425 (E.D.Pa. 2000). Describing the scope of common law immunity, the Pennsylvania Supreme Court has stated, "absolute privilege . . . is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority . . ." Durham v. McElynn, 772 A.2d 68, 69 (Pa. 2001). Although the doctrine of high public immunity originated in defamation suits, see Lindner, supra, the Supreme Court of Pennsylvania has stated it may be extended beyond the defamation context so long as the officials' actions were undertaken within the scope of their authority. Jonnet v. Bodick, 244 A.2d 751, 753 (Pa.1968). As a result, courts have predicted that the Supreme Court of Pennsylvania would extend the doctrine to include claims of "retaliatory

14

discharge, loss of consortium, invasion of privacy, and intentional infliction of emotional distress." Zugarek v. Southern Tioga School District, 214 F.Supp.2d 468, 479 (M.D.Pa. 2002); see also Smith, 112 F.Supp.2d at 425-26 (dismissing claims of defamation, intentional infliction of emotional distress, and invasion of privacy due to high public official immunity enjoyed by school officials); Ballas v. City of Reading, 2001 WL 73737, at *11 (E.D.Pa. Jan. 25, 2001) (holding city mayor has an absolute privilege against liability for state law claims of wrongful termination and loss of consortium); Poteat v. Harrisburg School District, 33 F.Supp.2d 384 (M.D.Pa. 1999) (finding high public officials have absolute immunity under state law from suits of defamation, invasion of privacy, and false light).

The plaintiff does not challenge that defendants Grieco and Koon are high public officials, but argues only that the actions allegedly taken by them were not in the course of their official duties and within the scope of their authority. The plaintiff's argument in her opposing brief is contrary to certain allegations in her complaint, wherein she specifically alleges in relation to the LCCY allegations that the defendants "in the course of their duties as employees and agents of LIU" made the report to LCCY. (Doc. 52, ¶¶54, 55). Otherwise, the plaintiff's second amended complaint is void of any allegation that the defendants' actions were taken outside of the scope of their official duties. As such, the court finds that, in their individual capacities, defendants Grieco and Koons are entitled to high public official immunity as to the

plaintiff's claims for defamation, invasion of privacy (false light) and intentional infliction of emotional distress and their motion to dismiss will be granted on this basis.

Relying on the current version of the Child Protective Services Law, ("CPSL"), and not the version in effect at the time relevant to the plaintiff's claims[2], the remaining individual defendants argue that they are immune from liability for their alleged report to CYS. They argue that they are mandatory reporters under the CPSL and could have been subject to criminal sanction for their failure to make a report where they had reason to believe that there may have been child abuse. Although the defendants would be mandatory reporters under both the current and former versions of the statute, 28 Pa.C.S. §6311(b) (effective May 29, 2007 to December 30, 2014); 28 Pa.C.S. §6311(a)(4) (effective July 1, 2015), and a good faith presumption is built into both versions, 28 Pa.C.S. §6318(b) (effective December 30, 2008 to June 30, 2014); 28 Pa.C.S. §6318(c) (effective July 1, 2014), the circumstances requiring reporting differs between the version relied upon by the defendants and the relevant version. The law in effect at the time of the alleged violations

---

[2]As reflected in their reply brief, the defendants are relying on the current version of the statute which had not yet come into effect at the time relevant to the plaintiff's second amended complaint. On the other hand, the plaintiff is relying a version of the statute which was no longer in effect at the time of her claims. The court relies upon the version of the statute which was actually in effect at the time of the plaintiff's claims, namely the version which was effective May 29, 2007 to December 30, 2014.

provided, in relevant part:

> (a) General rule. - - A person who, in the course of employment, occupation or practice of a profession, comes into contact with children shall report or cause a report to be made in accordance with section 6313 (relating to reporting procedure) when the person has reasonable cause to suspect, on the basis of medical, profession or other training and experience, that a child under the care, supervision, guidance or training of that person or of an agency, institution, organization or other entity with which that person is affiliated is a victim of child abuse, including child abuse by an individual who is not a perpetrator.

23 Pa.C.S. §6311(a) (effective May 29, 2007 to December 30, 2014).

From the materials before the court, there is no indication that the plaintiff's children were under the "care, supervision, guidance or training" of the defendants or were otherwise affiliated with the defendants. It would appear then that, although the defendants would have been mandatory reporters, they were not required to make a report under the applicable statute in this instance. Regardless of whether or not the defendants were required to make a report in this instance, the applicable version of the statute provided:

> (a) General rule.--A person, hospital, institution, school, facility, agency or agency employee that participates in good faith in the making of a report, whether required or not, cooperating with an investigation, including providing information to a child fatality or near fatality review team, testifying in a proceeding arising out of an instance of suspected child abuse, the taking of photographs or the removal or keeping of a child pursuant to section 6315 (relating to taking child into protective custody), and any official or employee of a county agency who refers a report of suspected abuse to law enforcement authorities or provides services under this chapter, shall have immunity from civil and criminal liability that might otherwise result by reason of those actions.

(b) Presumption of good faith.--For the purpose of any civil or criminal proceeding, the good faith of a person required to report pursuant to section 6311 (relating to persons required to report suspected child abuse) and of any person required to make a referral to law enforcement officers under this chapter shall be presumed.

23 Pa.C.S. §6318.

Thus, whether the defendants were required to report suspected abuse in this particular case or not, where they acted in good faith, they are entitled to immunity from civil liability. In her second amended complaint, the plaintiff makes general allegations of maliciousness on the part of the defendants. Whether the reporting of potential abuse was in good faith under the CPSL is judged against an objective standard rather than by alleged motives or allegations of maliciousness. Jones v. Snyder, 714 A.2d 453, 456 (Pa. Super. 1998) (citing Heinrich v. Conemaugh Valley Memorial Hospital, 648 A.2d 53, 57 (1994) (citations omitted)). Courts considering the issue have determined that "general language with regard to the motives of the individual [defendants] and allegations of maliciousness" are "insufficient to overcome the statutory presumption [of good faith . . .]" Id. (citing Heinrich, 648 A.2d at 58). Considering the general allegations of the plaintiff's second amended complaint, the court finds that she has not overcome the good faith presumption provided for in §6318[3]. Therefore, the defendants' motion to

---

[3]The court notes that, as in Heinrich, the plaintiff in this case is on her second amended complaint and has had two opportunities to set forth more (continued...)

dismiss will be granted on this basis[4].

Moving on to the plaintiff's federal claims, the defendants argue that Counts One through Five of the plaintiff's second amended complaint should be dismissed against LIU and the individual defendants in their official capacities because the plaintiff has not properly alleged a municipal liability claim. Specifically, the defendants argue that the plaintiff has not alleged the existence of any official policy in her second amended complaint and did not designate an official policy-maker who had actual or constructive knowledge of and acquiesced in their subordinates' alleged unconstitutional custom or practice.

Municipal liability under 42 U.S.C. §1983 is available only under certain circumstances. The standard first articulated in Monell[5] provides that "local governing bodies . . . can be sued directly under §1983 . . . where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and

---

[3](...continued)
specific facts to demonstrate that the defendants acted in bad faith. See Heinrich, 648 A.2d at 58.

[4]The defendants also argue in their motion to dismiss that the plaintiff's tort claims lack merit. Because the court has found that the defendants are entitled to one form of immunity or another on the tort claims, both in their official and individual capacities, the court need not address the merits arguments.

[5]Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658 (1978).

promulgated by that body's officers." 436 U.S. at 690. Thus, "[a] public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. §1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." Reitz v. County of Bucks, 125 F.3d 139, 144 (3d Cir. 1997).

Although complaints alleging municipal liability under §1983 are not subject to heightened pleading standards, see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, et al., 507 U.S. 163, 168 (1993), "[t]o satisfy the pleading standard [for a Monell claim], [a plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was." McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009). In addition, a plaintiff must establish causation by properly pleading that the municipality's policy or custom "was the source of [his or] her injury." Santiago v. Warminster Twp., 629 F.3d 121, 135 (3d Cir. 2010).

Following Monell, the case law has identified three ways in which a municipality may be held liable for the constitutional torts of its employee:

> First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, Jett v. Dallas Independent School District, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy, Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate,

rendering such behavior official for liability purposes, City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

McGreevy v. Stroup, 413 F.3d 359, 367 (3d Cir. 2005).

Here, nowhere in her allegations does the plaintiff identify a formal government policy or custom, nor does she identify any policymaker responsible for the unlawful conduct alleged. Moreover, the plaintiff fails to properly allege causation. The plaintiff argues that whether or not any of the individual defendants were policy makers, acting under the direction of policymakers, or individuals whose acts represented official policy, is a question to be explored in discovery. Further, she argues that the allegations of her complaint are sufficient because she alleges that LIU and its administrators were involved in the alleged unlawful acts and that this constitutes policy for purposes of Monell liability. The plaintiff's arguments are insufficient to sustain her municipal liability claim. See Wood v. Bethelehem Area Vocational Technical School, 2013 WL 2983672 (E.D.Pa. June 17, 2013), aff'd by Wood v. Williams, 568 Fed. App'x 100 (3d Cir. 2014). The defendants' motion to dismiss the plaintiff's complaint will be granted on this basis. To the extent that the plaintiff brings Counts One through Five against defendant LIU and the defendants in their official capacities, the plaintiff's second amended complaint will be dismissed.

With respect to the individual defendants in their individual capacities, the defendants argue that the plaintiff's First Amendment claim (Count

Thirteen) should be dismissed. Count Thirteen of the plaintiff's second amended complaint alleges that the defendants violated the plaintiff's First Amendment rights by retaliating against her for requesting FMLA leave and accommodations for her disabilities and for filing the instant action. The defendants argue that any First Amendment claim premised on the plaintiff's FMLA or ADA requests is barred. The court agrees. The plaintiff's request for FMLA leave is protected by the FMLA. Section 1983 is not the appropriate vehicle for the plaintiff's retaliation claim because the FMLA provides its own remedies, including a private right of action for retaliation. See 29 U.S.C. §§2615, 2617(a); Kilvitis v. County of Luzerne, 52 F.Supp.2d 403, 419 (M.D.Pa. 1999). Similarly, §1983 also may not be used to vindicate rights arising under the ADA, which also includes a retaliation provision. See §42 U.S.C.A. §12203 (prohibition against and remedies to address retaliation for exercising ADA rights); Kraemer v. Fontno, 2015 WL 3631847 (E.D. Pa. 2015) (Section 1983 may not be used to vindicate rights arising under the ADA or Rehabilitation Act) (citing 29 U.S.C. §794(b); 42 U.S.C. §12131(1); Stanek v. St. Charles Community Unit Sch. Dist. No. 303, 783 F.3d 634, 644 (7th Cir. 2015); A.W. v. Jersey City Pub. Schools, 486 F.3d 791, 804 (3d Cir. 2007) (en banc)). The plaintiff argues that she is not trying to enforce her FMLA and ADA rights through her §1983 claim, but is trying to enforce her First Amendment right "to engage in speech related to her repeated requests that the Defendants comply with FMLA as well and (sic) the Americans with Disabilities

22

Act and the Pennsylvania Human Relations Act." Regardless of how the plaintiff tries to reclassify her claim, the language of the second amended complaint is clear. The plaintiff alleges that the defendants violated her First Amendment rights by terminating her employment in retaliation for her requesting FMLA leave and accommodations for disabilities. As previously discussed, these claims are covered under the remedial provisions of the FMLA and the ADA and are not properly asserted under §1983.

In any event, the plaintiff's requests for FMLA leave and ADA accommodations are not protected by the First Amendment for the purposes of a public employee's retaliation claim, as it cannot be "'fairly considered as relating to any matter of political, social, or other concern to the community.'" Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). See also Eible v. Houston, 1998 WL 303692 (E.D. Pa. April 21, 1998), aff'd, 187 F.3d 625 (3d Cir. 1999), cert. denied, 528 U.S. 878 (1999) (holding that a plaintiff's request for ADA accommodations is not a matter of public concern); Warwas v. City of Plainfield, 489 Fed. App'x 585, 588-89 (3d Cir. 2012) (finding that a plaintiff's FMLA request was not a matter of public concern). The plaintiff relies upon Foraker v. Chaffinch, 501 F.3d 231 (3d Cir. 2007) (citing San Filippo v. Bongiovanni, 30 F.3d 424 (3d Cir. 1994)), for the proposition that a public employee who has petitioned the government through a formal mechanism is protected under the Petition Clause from retaliation for that activity, even if the

petition concerns a matter of solely private concern. However, those cases have been abrogated. Borough of Duryea v. Guarnieri, 564 U.S. 379 (2011). For all of the foregoing reasons, the defendants' motion to dismiss the plaintiff's First Amendment claim in Count Thirteen will be granted.

The defendants next argue that Count One (Illegal Search) of the plaintiff's second amended complaint should be dismissed because the plaintiff had no reasonable expectation of privacy in an unmarked bag left, after school hours, unattended in a school office.

In the employment context, a plurality of the United States Supreme Court rejected the contention that "public employees can never have a reasonable expectation of privacy in their place of work," and set out a two-step framework for considering Fourth Amendment claims against government employers. O'Connor v. Ortega, 480 U.S. 709, 717-19 (1987). At the first step, the court must consider "[t]he operational realities of the workplace" in order to determine "whether an employee has a reasonable expectation of privacy" there. Id. at 717. The O'Connor Court recognized that a government employee's workplace could be "so open to fellow employees or the public that no expectation of privacy [would be] reasonable." O'Connor, 480 U.S. at 717-18. This determination is made on "a case-by-case basis." Id. at 718. The Court explained that public employees' expectation of privacy may be reduced by virtue of actual office practices and procedures, or by legitimate regulation. Id. at 717. At the second step, where the court finds that an

employee has a legitimate privacy expectation, an employer's intrusion on that expectation "for noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances." Id. at 725-726.

In the instant action, the plaintiff argues that her bag was a personal possession, not like a workplace desk or file cabinet, in which she had a reasonable expectation of privacy. Quoting O'Connor, the plaintiff states:

> Not everything that passes through the confines of the business address can be considered part of the workplace context, however. An employee may bring closed luggage to the office prior to leaving on a trip, or a handbag or briefcase each workday. While whatever expectation of privacy the employee has in the existence and the outward appearance of the luggage is affected by its presence in the workplace, the employee's expectation of privacy in the contents of the luggage is not affected in the same way. The appropriate standard for a workplace search does not necessarily apply to a piece of closed personal luggage, a handbag, or a briefcase that happens to be within the employer's business address.

O'Connor, 480 U.S. at 716.

The case-by-case factors that courts consider relevant in making the reasonable expectation of privacy determination include: (1) whether the work area in question was given over to an employee's exclusive use, (2) the extent to which others had access to the work space, (3) the nature of the employment, and (4) whether office regulations placed the employee on notice that certain areas were subject to employer intrusions. See Vega-Rodriguez v. Puerto Rico Telephone Co., 110 F.3d 174, 179 (1st Cir. 1997).

At this point in the instant action, the court does not have sufficient

25

information upon which it can make the determination as to whether the plaintiff had a reasonable expectation of privacy in the tote bag which she left at her workplace. As such, the court must deny the defendants' motion to dismiss the plaintiff's unlawful search claim in Count One of the second amended complaint.

With respect to Count Two (Illegal Seizure) of the plaintiff's second amended complaint, the defendants argue that there was no "seizure" of the plaintiff's pill bottles because the medications were discovered in plain view. Despite this argument, the allegations of the plaintiff's second amended complaint are that the medications were inside of the tote bag and were only discovered upon a search of the bag. Taking these allegations as true, as the court must do at this stage of the proceedings, the defendants' motion to dismiss Count Two (Illegal Seizure) will be denied.

The defendants argue that Count Three (Due Process) of the plaintiff's second amended complaint should be dismissed because the plaintiff's medications which were allegedly seized were in plain view and therefore the confiscation of the plaintiff's prescription pill bottles was valid.[6] As the court

---

[6]Apparently believing that the plaintiff's due process claim in Count Three was based upon her termination, the defendants initially argued that the plaintiff failed to state a claim for violation of due process because she received notice and an opportunity to be heard in relation to her termination. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985). The plaintiff clarified in her opposing brief that her due process claim is based upon the seizure of her medication.

has determined that the plaintiff's complaint should proceed with respect to her seizure claim, the defendant's motion to dismiss Count Three (Due Process) on this basis will be denied as well.

With respect to Counts Four (Conspiracy to Interfere with Civil Rights) and Five (Neglect to Prevent Conspiracy) of the plaintiff's second amended complaint, the defendants argue that the plaintiff has not stated a claim for either conspiracy to interfere with civil rights or neglect to prevent conspiracy because she has failed to allege any facts showing a meeting of the minds between the individual defendants and/or a concerted act.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir.1989). A civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights, (2) the time and the place of the conduct, and (3) the identity of the officials responsible for the conduct. Oatess v. Sobolevitch, 914 F.2d 428, 432 n.8 (3d Cir. 1990). See also, Colburn v. Upper Darby Twp., 838 F.2d 663 (3d Cir. 1988). At the center of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377. As such, a plaintiff must allege with particularity material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive the plaintiff of a protected federal

27

right. Id. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

In this case, the plaintiff does not allege specific facts that tend to show that the defendants reached some understanding or agreement or plotted, planned and conspired together to deprive her of a protected federal right. In fact, the plaintiff concedes in her opposing brief that, while her complaint generally alleges that " . . . the Defendants planned, conducted and conspired to commit the unlawful acts complained of . . .", she ". . . does not specifically allege an agreement between the defendants . . ." The plaintiff indicates that such can be inferred from the complaint and that she will amend her complaint to specifically allege an agreement between the conspirators if necessary.

In its current state, the plaintiff's complaint does not properly allege a conspiracy. Although the plaintiff indicates that she will amend her complaint to do so, the court is not inclined to give her that additional opportunity, as she has already had two opportunities to adequately allege her claims. In light of this, the defendants' motion to dismiss the plaintiff's complaint with respect to Counts Four (Conspiracy to Interfere with Civil Rights) and Five (Neglect to Prevent Conspiracy) will be granted.

According to the defendants, Counts Six (Failure to Accommodate -

Section 504 of the Rehabilitation Act), Seven (Retaliation - Section 504 of the Rehabilitation Act), Fourteen (ADA - Discrimination)[7] and Fifteen (ADA - Retaliation) must be dismissed because the plaintiff has not alleged that she was "otherwise qualified" to perform the essential functions of her job. To this extent, the defendants argue that the plaintiff alleges that she continued to take leave time, even after she was instructed by her employer that she exhausted all of her FMLA leave entitlement. Because the plaintiff did not report to work on a regular basis, the defendants argue that she was unable to perform the essential functions of her job and was therefore not "otherwise qualified." Moreover, the defendants argue that employers are not required to offer, as a reasonable accommodation, indefinite absenteeism, an accommodation that is inherently one-sided and imposes an undue burden on the employer.

The plaintiff counters that her second amended complaint reflects that leave was necessary, in part, because she was denied certain requested accommodations and other accommodations were taken away. The plaintiff argues that intermittent leave was a reasonable accommodation and, even assuming that she no longer qualified for leave under the FMLA, the defendant should have offered her unpaid leave as a reasonable accommodation for her

---

[7]The defendants reference Counts Fifteen and Sixteen as the plaintiff's ADA counts; however, upon review, the ADA counts are Counts Fourteen and Fifteen.

disabilities.

While "an indefinite and open-ended" leave of absence "does not constitute a reasonable accommodation," Fogleman v. Greater Hazleton Health Alliance, 122 Fed. App'x 581, 586 (3d Cir. 2004), the Third Circuit has suggested that, in some circumstances, a finite period of medical leave may represent a reasonable accommodation, if the leave "would enable the employee to perform his essential job functions in the near future", Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004); see also Id. (noting that federal courts "have permitted a leave of absence as a reasonable accommodation under the ADA"); Walton v. Mental Health Ass'n of Se. Pa., 168 F.3d 661, 671 (3d Cir. 1999) (stating that "unpaid leave supplementing regular sick and personal days might . . . represent a reasonable accommodation" in some cases).

On this basis, courts within the Third Circuit have found plaintiffs to be "qualified" within the meaning of the ADA when the requested accommodation is a finite period of unpaid medical leave. See Bernhard v. Brown & Brown of Lehigh Valley, Inc., 720 F.Supp.2d 694, 701 (E.D.Pa. 2010) ("It would be entirely against the import of the ADA if [the plaintiff] were not considered qualified because he was not able to perform his essential job functions during his leave, as leave itself was the accommodation requested by [the plaintiff]."); Gibson v. Lafayette Manor, Inc., 2007 WL 951473, at *7 (E.D.Pa. Mar. 27, 2007) ("[T]he fact that [the plaintiff] could not return to work in any capacity at

the expiration of her [Family and Medical Leave Act ("FMLA")] leave is not dispositive of whether she is a 'qualified individual,' " because additional leave time "is a form of reasonable accommodation.").

In light of the above, the court will deny the defendants' motion to dismiss Counts Six (Failure to Accommodate - Section 504 of the Rehabilitation Act), Seven (Retaliation - Section 504 of the Rehabilitation Act), Fourteen (ADA - Discrimination) and Fifteen (ADA - Retaliation) of the plaintiff's second amended complaint at this stage of the proceedings.

The defendants next argue that Counts Ten (FMLA Interference) and Eleven (FMLA Retaliation) must be dismissed because the plaintiff was not eligible for relief under the FMLA. To state a claim for FMLA interference, the plaintiff must allege that: (1) she was an eligible employee under the FMLA; (2) the defendant-employer was subject to the requirements of the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to the defendant of her intention to take FMLA leave; and (5) she was denied the benefits to which he was entitled under the FMLA. Ross v. Gilhuly, 755 F.3d 185, 191-92 (3d Cir. 2014). In Count Ten (FMLA Interference) of her complaint, the plaintiff alleges that the defendants terminated her approved intermittent FMLA leave without cause or adequate notice on the basis that she no longer qualified under the "hours of service" requirement. The plaintiff alleges, however, that she was no longer qualified because the defendants placed her on unnecessary administrative leaves in order to render her

31

ineligible for FMLA leave.

An FMLA retaliation claim arises under 29 U.S.C. §2615(a)(2), which makes it unlawful for an employer to discriminate against an employee who has taken FMLA leave. 29 U.S.C. §2615(a)(2). The FMLA's implementing regulations provide that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. §825.220(c). In order to establish a prima facie case of discrimination or retaliation based on FMLA leave, the plaintiff must show that: (1) she took an FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse employment decision was causally related to his leave." Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004).[8] In Count Eleven (FMLA Retaliation), the plaintiff alleges that the defendants terminated her FMLA leave and status in order to punish her for asserting her legal rights and for using FMLA leave to which she was entitled.

In seeking the dismissal of the plaintiff's FMLA claims, the defendants argue that under the statute they were entitled to re-calculate the plaintiff's entitlement to leave upon her first absence for her condition at the conclusion of the 12-month period for which she was initially determined to be eligible. In

---

[8]FMLA retaliation claims based on circumstantial evidence are governed by the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012).

re-calculating the plaintiff's eligibility at that time, the defendants provide that they were justified in not including time for involuntary leaves, including suspension, from her "hours of service" and, on this basis, they determined that she did not meet the "hours of service requirement". Because the plaintiff's intermittent leave was terminated when she was no longer eligible, the defendants argue that her FMLA claims for interference and retaliation in Counts Ten and Eleven of her second amended complaint must be dismissed.

Despite the defendants' arguments to the contrary, at this stage of the proceedings, the court finds that the plaintiff can proceed with her FMLA claims. The plaintiff has alleged in her complaint that she was eligible for intermittent leave under the FMLA until the defendants improperly interfered with her FMLA rights. The arguments which the defendants raise to challenge the plaintiff's eligibility require the court to consider factual matters outside of the pleadings which would be improper at this stage. For instance, although the defendants argue that they were entitled to recalculate the plaintiff's FMLA when they terminated her leave in January 2014, there is no information before the court as to when the 12-month period for which the plaintiff was eligible concluded, rendering recalculation proper. Moreover, the court would be required to consider what factors went into the calculation of the 1,250 hour requirement, matters which are not currently before the court by way of the plaintiff's pleading. As such, the court finds disposition of the plaintiff's FMLA claims on these bases to be improper at this stage of the proceedings and the

defendants' motion to dismiss will be denied on this basis.

With respect to defendant Geisinger, the defendants argue that there is no cognizable claim which can be brought against her and that, in any event, the PHRA claim must be dismissed as there is no individual liability for non-supervisory employees under the PHRA. The plaintiff has alleged that defendant Geisinger aided and abetted the other defendants' unlawful practices by, *inter alia*, participating in the unlawful search and seizure of the plaintiff's property and making a false report regarding the plaintiff to LCCY. The court has determined that the plaintiff's illegal search and seizure claims will proceed at this point as to all defendants. As to the plaintiff's PHRA claims, individuals may be held liable under the PHRA. See 43 Pa.C.S.A. §955. The PHRA extends liability to any persons who "aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . ." Id. §955(e). However, "[c]ourts have limited the reach of this language to supervisory employees who either fail to act to stop discriminatory treatment or directly discriminate against the plaintiff." Abdul-Latif v. Cnty. of Lancaster, 990 F.Supp.2d 517, 532-33 (E.D.Pa. 2014); see also Dici v. Cmwlth. of Pennsylvania, 91 F.3d 542, 552-53 (3d Cir. 1996). In this regard, courts have reasoned that such liability is appropriate because supervisory employees can share the discriminatory intent and purpose of the employer. Id. Since the allegations of the plaintiff's second amended complaint make clear that defendant Geisinger is not a supervisory individual, but simply a co-

worker, the plaintiff's PHRA claims cannot survive with respect to her. The defendants' motion to dismiss with therefore be granted in this respect as well.

Finally, the defendants argue that the plaintiff's requests for punitive and liquidated damages must be dismissed. The defendants argue that the law clearly establishes that punitive damages may not be assigned against a governmental entity and therefore any request for punitive damages against defendant LIU or the individual defendants in their official capacities must be dismissed. The plaintiff concurs in this argument and the defendants' motion to dismiss will be granted on this basis.

The defendants also argue that the punitive damages claim against the individual defendants for Counts Eight (Defamation), Nine (Invasion of Privacy - False Light), and Twelve (IIED) must be dismissed as there is no allegation of conduct that was malicious, wanton, willful, reckless or oppressive. Because the court is dismissing Counts Eight, Nine and Twelve of the plaintiff's complaint, this argument is moot.

The defendants argue that the claim of liquidated damages in Counts Ten (FMLA Interference) and Eleven (FMLA Retaliation) must be dismissed where defendants possessed a reasonable basis for denying the plaintiff continued leave and therefore, if any violation is found, defendants' conduct was not intentional. As set forth above, the court finds that dismissal of the complaint as to these counts is inappropriate at this time, as the defendants have requested that we consider factual matters outside of the pleadings.

Given the court's determination, the claim of liquidated damages will also remain pending further consideration of this claim.

## IV.    CONCLUSION

In light of the foregoing, an appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date:  March 24, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0491-01.wpd